[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14482
_____

D.C. Docket No. 2:10-cv-00744-SPC-DNF


EMERSON PINKNEY,

                                                            Petitioner-Appellant,

                              versus

SECRETARY, DOC,

                                                            Respondent-Appellee,

FLORIDA ATTORNEY GENERAL,

                                                            Respondent.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 6, 2017)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and DUBINA, Circuit
Judges.

ED CARNES, Chief Judge:

Emerson Pinkney filed a pro se amended 28 U.S.C. § 2254 petition alleging that his appellate counsel was ineffective for failing to argue that a jury instruction given by the trial court was fundamental error under Florida law.  The district court denied his § 2254 petition, and this Court granted a certificate of appealability and appointed counsel for him.  This is Pinkney's appeal, which is all about Florida's fundamental error doctrine.

## I.  BACKGROUND

It was about 2:25 in the morning when Emerson Pinkney entered Barbara Jones' apartment.  Two people who were in the apartment saw him walk in pointing a gun.  Pinkney says he was unarmed.  Roy Williams was at the apartment, and he had his own pistol.  Williams and Pinkney were on bad terms and it involved two women.  Pinkney was dating the mother of Williams' children, and Pinkney believed that Williams had "cussed . . . out" Pinkney's mother.  Inside the apartment, Williams and Pinkney started fighting.  Pinkney shot Williams in the head, killing him.

The State's second amended information charged Pinkney with four crimes: manslaughter with a firearm, in violation of Florida Statutes §§ 782.07(1), 775.087; aggravated assault with a firearm, in violation of Florida Statutes §§ 784.021, 775.087; first degree burglary with assault or battery while armed with a deadly weapon, in violation of Florida Statutes §§ 810.02, 775.087; and

2

possession of a firearm by a convicted felon, in violation of Florida Statutes §§ 790.23, 775.087(2)(a)(1).

During Pinkney's four-day jury trial, the State presented several witnesses. Latoya Woolfork was Williams' girlfriend at the time of the shooting, and both she and Jones were present at Jones' apartment when Williams was shot. Jones testified that Pinkney knocked on her apartment door, entered without permission, and pointed a gun at her. She stated that Pinkney walked toward the right side of the room after entering and did not see Williams, who was standing to the left side of the room and also had a gun. Jones testified that she "got up and ran" to the back of the house, while Woolfork and Williams both stayed in the room. She said that she then heard a gunshot and Woolfork screaming and she later saw Williams on the floor.

Woolfork testified that earlier on the night of the shooting her boyfriend Williams picked up his "small .22" caliber pistol from his sister's house. He decided to get the weapon because he had heard that Pinkney's mother had told Pinkney that Williams had "cussed her out." According to Woolfork, Williams was "upset" about that because "it was a lie." She testified that, after they were inside Jones' apartment, Pinkney walked in with his gun pointed, and Williams tried to grab Pinkney's gun. As Pinkney and Williams started fighting, Woolfork "was trying to break it up" and "was in the middle of it." She said that Pinkney

3

and Williams fell down, but Pinkney got up before Williams and shot him "[r]ight straight down into his head."

The State also presented witnesses who had investigated the crime. The detective assigned to the case testified that he did not find any guns or shell casings at Jones' apartment.[1] A medical examiner who reviewed Williams' autopsy report testified that a bullet entered the top of Williams' head and went straight down to the base of his skull. He also testified that, according to the report, there were no "abnormalities or injuries" to Williams' hands. And a crime lab analyst from the Florida Department of Law Enforcement in Tampa testified that the projectile removed from Williams' head was from a ".38 Special caliber revolver[ ]."

Pinkney took the stand in his own defense and was the last witness to testify. He admitted that he killed Williams, but said that he was not armed on the night of the incident, and that the shooting was "[o]n accident" and occurred as he was fighting for his life. He stated that, a few hours before the incident, he had told Jones that he would swing by her apartment later. When he got to her apartment, according to Pinkney, he knocked on the door and someone unlocked it. He testified that, after he entered through the door, someone approached him from behind and put a gun to the left side of his head, and "out of reflex," he tried to

---

[1] Revolvers do not leave shell casings unless you open the cylinder and dump out the shells, while semiautomatic pistols immediately eject a spent shell casing upon firing. Williams' .22 pistol was a semiautomatic.

4

grab the gun and fight the person.  Pinkney told the jury that he and the other person each had a hand on the gun, but that he (Pinkney) never had his finger on the trigger or had complete control of the gun.  It was as he was "fighting for [his] life" that Pinkney heard a "pop!" and saw the other person, along with the gun, fall to the floor.

Pinkney insisted that the shooting was accidental.  When asked "who killed Roy Williams," Pinkney responded:  "I did, sir.  On accident."  He later confirmed once more that it was an accident and added:  "I didn't intentionally shoot [Williams]."  He explained to the jury that although he was "angry" and "mad" after hearing that Williams had disrespected his mother, he was not "mad to the point where [he wanted] to kill somebody."  Pinkney stated that when he was fighting Williams, he was fighting for his life, and that there "[a]in't no fair rules in fighting for your life," but he acknowledged that he did not have any cuts on his hands or any bruises from fighting Williams.

After closing arguments, the trial court instructed the jury.  It first instructed on the manslaughter charge, stating:  "If you find Roy Williams was killed by Emerson Pinkney, you will then consider the circumstances surrounding the killing in deciding if the killing was Manslaughter With a Firearm, Manslaughter, or whether the killing was excusable or resulted from justifiable use of deadly force."  The court also instructed the jury that the "killing of a human being is excusable,

5

and therefore, lawful" if it is "committed by accident" under certain circumstances. It then told the jury about Pinkney's affirmative defense of self-defense and the forcible felony exception to that defense:

> An issue in this case is whether the defendant acted in self defense. It is a defense to the offense with which Emerson Pinkney is charged if the death of Roy Williams resulted from the justifiable use of force likely to cause death or great bodily harm.
>
> The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:
>
>> 1.  Any attempt to commit Manslaughter With a Firearm upon him. However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
>>
>>> (1) Emerson Pinkney was attempting to commit, committing, or escaping after the commission of Manslaughter With a Firearm.[2]

Pinkney's counsel did not object to any of the instructions. The jury found Pinkney guilty of all four charged crimes, and the court sentenced him to life in prison.

Pinkney appealed his conviction. Although his appellate counsel raised several contentions, he did not challenge the trial court's forcible felony instruction. The Florida Second District Court of Appeal summarily affirmed his conviction. Pinkney v. State, 911 So. 2d 111 (Fla. 2d DCA 2005) (table).

---

[2] We will refer to the underlined portion of the trial court's instructions as the "forcible felony instruction" or the "forcible felony exception instruction."

6

A few months later Pinkney filed in the Florida Second District Court of Appeal a pro se Florida Rule of Appellate Procedure 9.141 petition for writ of habeas corpus contending, among other things, that his appellate counsel was ineffective for failing to argue that the trial court committed "fundamental error" under Florida law in instructing the jury on the forcible felony exception to self-defense.  The court of appeal summarily denied Pinkney's petition.  Pinkney v. State, 941 So. 2d 379 (Fla. 2d DCA 2006) (table).

Pinkney then filed in federal court an amended pro se § 2254 petition for habeas corpus claiming, among other things, that his "appellate counsel was ineffective for fail[ing] to raise fundamental error in [the] jury instructions."  The district court rejected that claim, stating that the instruction was "constitutionally acceptable" and that Pinkney's appellate counsel "cannot be faulted for [not] raising a meritless issue."  The court dismissed some of his remaining claims and denied the others, and Pinkney appealed.

We granted a certificate of appealability on one question:  "Whether the district court erred when it denied Pinkney's claim that his appellate counsel rendered ineffective assistance by failing to argue that the state trial court committed a fundamental error when it instructed the jury on the defenses of self-defense and justifiable use of deadly force?"  We appointed Michael Pusateri to represent Pinkney in this appeal.

7

## II.  DISCUSSION

### A.  The Strickland And Section 2254(d) Standards

A federal court may not grant habeas relief on claims that were previously adjudicated in state court unless the adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Where a state court's decision is unaccompanied by an opinion explaining why the court denied relief, a federal habeas court "must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  See Harrington v. Richter, 562 U.S. 86, 98, 102, 131 S. Ct. 770, 784, 786 (2011).

To succeed on an ineffective assistance of counsel claim, a defendant must establish (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  To show deficient performance, the defendant "must establish that no competent counsel would have taken the action that his counsel did take."  United States v. Freixas, 332 F.3d 1314, 1320 (11th Cir. 2003)

8

(quotation marks omitted).  To show prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

"Surmounting Strickland's high bar is never an easy task."  Harrington, 562 U.S. at 105, 131 S. Ct. at 788 (quotation marks omitted).  And "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (citations omitted).  As a result, when § 2254(d) applies, as it does here, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.  And although "the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension," we "must defer to the state's construction of its own law" when the validity of the claim that appellate counsel failed to raise turns on state law.  Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984), superseded by statute on other grounds, Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 2057; see Agan v. Vaughn, 119 F.3d 1538, 1549 (11th

Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

## B.  Why The Instruction Was Error

As Pinkney contends, and the State concedes, the forcible felony instruction the trial court gave was erroneous.  Under Florida law a person is justified in using deadly force if he reasonably believes that it is necessary to prevent "imminent death or great bodily harm to himself" or another.  Fla. Stat. § 776.012(2).  But that defense is subject to exceptions, one of which is known as the forcible felony exception, which provides that the "justification [defense] is not available to a person who . . . [i]s attempting to commit, committing, or escaping after the commission of, a forcible felony . . . ."  Id. § 776.041(1).

Florida courts have held that the forcible felony exception instruction applies only when the defendant is committing an independent forcible felony separate from the one for which he is claiming self-defense.  See Martinez v. State, 981 So. 2d 449, 454 (Fla. 2008); see also Giles v. State, 831 So. 2d 1263, 1265 (Fla. 4th DCA 2002) (explaining that the plain language of § 776.041(1) "indicates that it is applicable only under circumstances where the person claiming self-defense is engaged in another, independent 'forcible felony' at the time").  For that reason, Florida appellate courts have held that an instruction is erroneous if it lists the forcible felony with which the defendant is charged as the one that keys the

10

exception which locks out self-defense.  See Zuniga v. State, 869 So. 2d 1239, 1240 (Fla. 2d DCA 2004); see also, e.g., Martinez, 981 So. 2d at 453–54 (holding that the trial court erred in instructing the jury that the use of deadly force would not be justifiable if the defendant was attempting to commit an attempted murder or aggravated battery because those were "the very crimes [the defendant] attempted to justify as having been committed in self-defense"); Giles, 831 So. 2d at 1266 (holding that the trial's court forcible felony instruction was erroneous because the defendant had been charged with only one forcible felony and, as a result, the instruction "basically negated [the defendant's] defense" because it "improperly told the jury that the very act [the defendant] sought to justify itself precluded a finding of justification").

In giving the self-defense instruction on the manslaughter charge, the trial court instructed the jury that Pinkney was not entitled to claim self-defense to the charge of manslaughter if he was committing or attempting to commit manslaughter.  That instruction was circular because under it the act of manslaughter ruled out the defense of self-defense to the charge of manslaughter. See Martinez, 981 So. 2d at 453–54; Zuniga, 869 So. 2d at 1240.  It was error for the trial court to give an instruction that had the effect of removing the defense of self-defense from the case.

11

In deciding otherwise, the district court noted that "both trial counsel and appellate counsel found no error" in the instruction. But that does not matter because courts decide issues of law, counsel do not. The district court added that the instruction "mirrors" Florida's model jury instruction on the justifiable use of deadly force. But the question is not whether the instruction that was given misstated the model jury instruction language on the subject, but whether it suffers from a flaw that the Florida appellate courts have held renders it erroneous. It does. Because Pinkney asserted self-defense to the manslaughter charge and the instruction listed manslaughter as an exception to the forcible felony doctrine in a manslaughter case, it was error under Florida law. See Zuniga, 869 So. 2d at 1240. That does not necessarily mean that Pinkney is entitled to habeas relief. That depends on whether the error is fundamental error under Florida law.

C. Why It Matters If The Error Was Fundamental Under Florida Law

Under Florida law, if a defendant fails to object to a jury instruction at trial, the instruction may be challenged on appeal only if it amounts to "fundamental error." See State v. Delva, 575 So. 2d 643, 644 (Fla. 1991) ("Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred."). That means unless the unpreserved jury instruction error that appellate counsel failed to raise is fundamental error, the Florida appellate courts would not have granted relief even

12

if counsel had raised it on appeal.  See id.; Rutherford v. Moore, 774 So. 2d 637, 646 (Fla. 2000) ("Because this issue was not preserved for review, if it had been raised on appeal, it would have warranted reversal only if it constituted fundamental error . . . ."). Fundamental error, the Florida decisions teach, is "error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996) (alteration and quotation marks omitted).

It follows that, unless the instruction error is fundamental, Pinkney's claim of ineffective assistance of appellate counsel fails for two reasons.  First, an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.  See Lindsey v. Smith, 820 F.2d 1137, 1152 (11th Cir. 1987) (holding that a habeas petitioner who claims counsel should have followed a strategy that would itself have proven futile has not shown that counsel's performance was deficient); Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); Chandler v. Moore, 240 F.3d 907, 917

13

(11th Cir. 2001) (holding that appellate counsel could not be ineffective under Strickland for failing to raise a futile issue); see also Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001) (holding that appellate counsel could not be ineffective for failing to make an argument that "would have been futile because the argument had already been waived by trial counsel's failure to raise the objection").

Second, a petitioner cannot show prejudice from the failure of an appellate counsel to raise an issue that would not have been considered on appeal because it was not raised in the trial court. See Diaz, 402 F.3d at 1144–45 (concluding that the failure to raise an issue in the trial court rendered the claim non-meritorious, and as a result appellate counsel did not provide ineffective assistance by failing to raise that claim on appeal); see also Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim."). Prejudice requires a reasonable probability of a different result, Strickland, 466 U.S. at 694, 104 S. Ct. at 2068, and there is no reasonable probability that the result of an appeal would have been different if appellate counsel had raised an issue the court would have refused to consider because it was not preserved in the trial court. So prejudice, as well as performance deficiency, turns on whether the instruction error was fundamental.

14

D.  The Florida Court's Decision Was Based On The Instruction Not Being Fundamental Error, Which Is A State Law Issue

The State contends that the fundamental error determination is not really up to us.  It argues that, in assessing a claim of ineffective assistance based on appellate counsel's failure to raise an unpreserved error, Florida courts must first determine whether the error was fundamental error.  And only if those courts determine that the error was fundamental can they conclude that counsel was ineffective.  Because the Florida Second District Court of Appeal denied Pinkney's state habeas petition, the State contends that the Florida court has already determined, albeit implicitly, that the error was not fundamental error, and this Court must defer to the "Florida court's underlying determinations of state law."  If so, Pinkney cannot show ineffective assistance under Strickland.  We agree.

As the Supreme Court stated in its Harrington decision, our task is to determine what arguments or theories "could have supported" the state court's decision, and we must deny relief if it "is possible fairminded jurists could" find that decision was not "contrary to, or involved an unreasonable application of" the holding in an earlier Supreme Court decision.  562 U.S. at 102, 131 S. Ct. at 786; see 28 U.S.C. § 2254(d)(1).  There are two arguments or theories that could have supported the Florida appellate court's decision.  One is that while the forcible felony exception instruction was error, it was not fundamental error.  As a result, appellate counsel's failure to raise the claim was not professionally deficient for

15

<u>Strickland</u> purposes; as we have explained, an attorney is not required to raise on appeal issues that will not lead to any relief for the defendant, and that includes issues that were not properly preserved in the trial court.  <u>See</u> <u>supra</u> pp. 13–14.  In addition, as we have also explained, a petitioner cannot show prejudice from an appellate counsel's failure to raise an issue that would not have been decided because it was not preserved in the trial court.  <u>See</u> <u>supra</u> p. 14.

The only other argument or theory that could have supported the Florida appellate court's decision denying Pinkney relief is that, even if the instruction error did amount to fundamental error under Florida law, counsel's failure to raise it was not ineffective assistance of counsel.  That theory, we may and do assume, would have been contrary to or an unreasonable application of prior Supreme Court decisions:  <u>Strickland</u> and its progeny.  We may make that assumption because it does not matter to the result of this case.  It doesn't matter to the result because when faced with a summary state court decision that is subject to more than one interpretation, we must choose the interpretation of the decision that is consistent with the state court knowing and correctly applying federal law, including ineffective assistance of counsel law.  <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1240 (11th Cir. 2016) ("[T]he Supreme Court has instructed us to presume that state courts know and follow the law.") (alteration and quotation marks omitted); <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740,

16

748 (11th Cir. 2010) ("The usual presumption that state courts know and follow the law is even stronger in the AEDPA context because § 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.") (alteration in original and quotation marks omitted); Ventura v. Att'y Gen., Fla., 419 F.3d 1269, 1285 (11th Cir. 2005) ("[T]he Supreme Court has explained that '§ 2254(d) requires that state-court decisions be given the benefit of the doubt.  Readiness to attribute error is inconsistent with the presumption that state courts know and follow the law.'") (quoting Holland v. Jackson, 542 U.S. 649, 655, 124 S. Ct. 2736, 2739 (2004)).

Giving the Second District Court of Appeal decision the benefit of the doubt and assuming, as we must, that court knew and followed Strickland and other Supreme Court decisions on ineffective assistance of counsel, we conclude that the Second District Court of Appeal would have granted Pinkney relief if it had decided that the instruction error was fundamental error.  It would have granted relief because if the error was fundamental, the direct appeal court could have decided the issue on the merits, which would mean that appellate counsel's failure to raise the issue was ineffective assistance of counsel.

For these reasons, we interpret the Second District Court of Appeal decision rejecting Pinkney's ineffective assistance of appellate counsel claim as having been based on the theory that while the forcible felony exception instruction was

17

error, it was not fundamental error and, as a result, the direct appeal court would not have decided that claim on the merits if appellate counsel had raised the claim.

Pinkney argues, in effect, that we should not interpret the Second District Court of Appeal decision that way because the instruction error was fundamental; he says, in effect, that the state appellate court was wrong not to recognize the error as fundamental. That argument fails for two reasons. One is that the fundamental error question is an issue of state law, and state law is what the state courts say it is. See Alvord, 725 F.2d at 1291; Agan, 119 F.3d at 1549. As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law. See Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Wainwright v. Goode, 464 U.S. 78, 84, 104 S. Ct. 378, 382 (1983) (stating that the views of state appellate courts with respect to state law "are binding on the federal courts"); see also Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1303 (11th Cir. 2014) ("[T]he Florida Supreme Court's interpretation of state law . . . is binding on federal courts."); Reaves v. Sec'y, Fla. Dep't of Corr., 717 F.3d 886, 903 (11th Cir. 2013) (same). The second reason we reject Pinkney's argument is that we ourselves don't believe that the instruction error was fundamental error.

18

E.  Why The Error Was Not Fundamental Error Under Florida Law

Alternatively, even if the issue were ours to decide, we would conclude that the error involving the forcible felony exception instruction was not fundamental error under Florida law.  As we explained earlier, Florida courts define fundamental error as "error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  Kilgore, 688 So. 2d at 898 (alteration and quotation marks omitted).  Given that demanding standard, the Florida Supreme Court has explained that the "doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application."  Smith v. State, 521 So. 2d 106, 108 (Fla. 1988).  "The fundamental nature of [an] error can be gleaned only from a review of the full record on appeal."  Baker v. State, 877 So. 2d 856, 858 (Fla. 2d DCA 2004) (quotation marks omitted).  The facts of the cases involving the issue illustrate that.

The Smith case involved a "faulty instruction" on the defense of insanity. See Smith, 521 So. 2d at 107.  Although the Florida Supreme Court in an earlier decision had determined that the same instruction did not "completely and accurately state th[e] law," see id. (quoting Yohn v. State, 476 So.2d 123, 128 (Fla.

19

1985)),[3] in Smith the Florida Supreme Court reasoned that the erroneous instruction was not "so flawed as to deprive [the] defendants claiming the defense of insanity a fair trial" because "the [old] standard jury instructions, as a whole, made it quite clear that the burden of proof was on the state to prove all the elements of the crime beyond a reasonable doubt." Id. at 108. As a result, the error was not fundamental. Id.

Along the same lines, in Holiday v. State, the Florida Supreme Court considered whether the trial court committed fundamental error in giving an instruction on the affirmative defense of entrapment that did not accurately set forth the burden of proof. 753 So. 2d 1264, 1265 (Fla. 2000). The court held that, because "the situation" was "substantially similar to the situation" in the Smith decision, based on the Smith court's reasoning, "it was not fundamental error to give [that] instruction on entrapment even though such instruction did not accurately reflect the burden of proof analysis set forth by this Court in [an earlier decision]." Id. at 1269–70. The court also noted that "the entrapment defense in this case was tenuous at best and the facts [did] not present a compelling demand for relief." Id. at 1270 n.3.

---

[3] The old version of the instruction, which was the one given at Smith's trial, was not clear on the point that under Florida law, if there is enough evidence presented to create a reasonable doubt about sanity, "the presumption of sanity vanishes and the state must prove beyond a reasonable doubt that the defendant was sane." Smith, 521 So. 2d at 108.

20

The Florida Supreme Court's decision in Martinez addressed the "interaction" between an erroneous forcible felony instruction and fundamental error, which is the issue before us.  981 So. 2d at 451, 454–55.  The defendant was charged with attempted premeditated murder and aggravated battery with a deadly weapon for the single act of stabbing his girlfriend, and he asserted self-defense.  Id. at 450.  He did not object to the trial court's erroneous forcible felony instruction.  Id.  He appealed his conviction for attempted first degree premeditated murder arguing that the forcible felony instruction that was given was fundamental error.  Id. at 450–51.

The Florida Supreme Court disagreed.  Id. at 457.  It explained that an erroneous jury instruction on an affirmative defense does not always constitute fundamental error.  See id. at 455.  Instead, it held, "fundamental error only occurs where a jury instruction is 'so flawed as to deprive defendants claiming the defense . . . of a fair trial.'"  Id. (alteration in original) (quoting Smith, 521 So. 2d at 108).  After reviewing the record, the court provided two reasons why fundamental error did not occur in that case.  Id. at 455–56.  "First," it stated, "self-defense was not the only strategy pursued by [the defendant]."  Id. at 456.  So "although the forcible-felony instruction was erroneous and could have confused the jury, it did not deprive [the defendant] of his sole, or even his primary, defense strategy."  Id.  Second, the defendant's "claim of self-defense was extremely weak."  Id.  The

21

court said that the defendant's self-defense claim "strained even the most remote bounds of credulity" and that he provided inconsistent testimony and a "very questionable hypothesis" about how the victim got one of her wounds.  Id.  For those reasons, the court concluded, "even if an erroneous forcible-felony instruction could constitute fundamental error in some circumstances — an issue we decline to address today — the instant case most certainly does not present a compelling demand for the application of the fundamental-error doctrine."  Id. at 457.

Pinkney's case also does not "present a compelling demand" for application of the fundamental error doctrine.  Smith, 521 So. 2d at 108.  As noted earlier, he testified at his trial that the shooting was accidental and occurred as he was fighting for his life.  The trial court instructed the jury that, in certain circumstances, the "killing of a human being is excusable, and therefore, lawful" if it is "committed by accident."  And, of course, it also instructed the jury on self-defense and the forcible felony exception to that defense.  So even if we agreed with Pinkney's contention that his accidental shooting theory did not contradict his self-defense theory, it is apparent that self-defense was not his only defense.

Not only that, but the evidence that Pinkney shot in self-defense was tenuous.  His own testimony undermined that defense.  For example, although Pinkney stated that the shooting occurred as he was fighting for his life, he also

22

testified that he never had complete control of the gun and never even had his finger on the trigger. Instead, he testified that Williams' finger was on the trigger. That evidence may support Pinkney's claim that the shooting was accidental, but it weakens his claim that it was in self-defense.

Other evidence at the trial contradicted Pinkney's testimony and weakened his assertion of self-defense. Jones and Woolfork both testified that Pinkney entered the apartment pointing a gun. The evidence also showed that the bullet that killed Williams entered the top of Williams' head and went straight down to the base of his skull. That objective evidence contradicts Pinkney's testimony that both he and Williams had a hand on the gun when he shot Williams. The evidence of the bullet's path also supports Woolfork's testimony that Pinkney was "standing over [Williams]" and had the gun "aiming down at his head."

The bullet retrieved from Williams' head was from a .38 caliber revolver, not from a .22 caliber semiautomatic pistol like the one Williams was carrying. That is consistent with the detective's testimony that there were no shell casings found at the scene because, as noted earlier, revolvers do not eject shell casings, while semiautomatic pistols do. See supra note 1. Pinkney also acknowledged that he had no bruises or cuts on his hands from fighting Williams, and the medical examiner testified that the autopsy report showed that Williams had no bruises or cuts on his hands. The upshot is that the evidence in the record undermines

23

Pinkney's assertion of self-defense, as well as his testimony that he was not armed when he went to Jones' apartment.

It is true that in Zuniga the Florida Second District Court of Appeal found that a trial court's erroneous forcible felony instruction amounted to fundamental error, see Zuniga, 869 So. 2d at 1240, but that case is distinguishable from this case. In Zuniga the defendant was charged with aggravated battery with a deadly weapon. Id. at 1239. In instructing the jury on self-defense, the trial court stated that: "[T]he use of force likely to cause death or great bodily harm is not justifiable if you find [that the] defendant was attempting to commit, or committing or escaping after the commission of an aggravated battery. . . ." Id. (alteration in original and emphasis omitted). After concluding that that instruction was erroneous, the appellate court considered whether it was fundamental error. Id. at 1240. It explained that the "only disputed issue at trial was whether [the defendant] acted in self-defense," and that the "self-defense instruction can be likened to an element of the offense for its importance to the defendant." Id. (emphasis added). The court concluded that the error was fundamental. Id.

Unlike the Zuniga case, in this case self-defense was not the only disputed issue. Of course, it was disputed whether Pinkney acted in self-defense in shooting Williams, but it was also disputed whether Pinkney shot Williams in the head intentionally or accidentally. And it was disputed whether Pinkney was armed

24

when he entered Jones' apartment and shot Williams. While the Zuniga decision was one of those "rare cases . . . where the interests of justice present[ed] a compelling demand" for application of the fundamental error doctrine, Smith, 521 So. 2d at 108, the evidence in that case was materially different from the evidence in this one. And because the fundamental error analysis turns on the evidence in the record, see Baker, 877 So. 2d at 858, the Zuniga decision does not establish that the Florida Second District Court of Appeal could not have reasonably concluded that fundamental error did not occur in this case.

Considering all of the evidence presented at trial, we are convinced that the error in the forcible felony jury instruction did not "reach[ ] down into the validity of the trial itself to the extent that [the] verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore, 688 So. 2d at 898 (quotation marks omitted). This is not one of those "rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for [the] application" of the fundamental error doctrine. Smith, 521 So. 2d at 108. So even if the state law issue were ours to decide, we would decide it consistently with the result in the Second District Court of Appeal decision. That court, we are convinced, rejected Pinkney's ineffective assistance of appellate counsel claim because the error was not fundamental error and, for that reason,

25

would not have gotten Pinkney any relief on direct appeal if his counsel had raised

it.  It follows that it wasn't ineffective assistance of counsel not to raise the issue.

   **AFFIRMED.**