[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13657
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-01196-EAK-TBM

JOSE F. SANTIAGO,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF
CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 2, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Jose Santiago, a Florida prisoner, who was convicted of murder, attempted murder, opposing an officer with violence, and fleeing or eluding, appeals from the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition as to his convictions. This Court granted a certificate of appealability ("COA") as to whether Santiago's trial counsel was ineffective for failing to object to the trial court's instructing the jury on the forcible felony exception to self-defense, which Santiago contends was erroneous. After careful review, we affirm.

## I.  STATE TRIAL PROCEEDINGS

### A.    2000 Indictment

On July 26, 2000, in Florida state court an indictment charged Santiago with first-degree murder of Kevin Hayes (Count 1) and attempted first-degree murder of Derrick Phillips (Count 2). On August 29, 2001, Santiago was further charged with another count of attempted first-degree murder of George Smith (Count 3), two counts of aggravated assault on a law enforcement officer, (Counts 4 & 5), obstructing or opposing an officer with violence (Count 6), and felony fleeing to elude (Count 7). All of the charges stemmed from a July 20, 2000 incident outside of a bar known as "The Garage" in Tampa, Florida, where Santiago shot two people. Santiago's gunshots injured Derrick Phillips and killed Kevin Hayes. Santiago then attempted to flee the scene. Santiago pled not guilty and proceeded to trial.

**B.    2002 Trial Evidence**

At trial in July 2002, the evidence revealed that Santiago was involved in an ongoing dispute with an individual named George Smith. Sometime in 1998 or 1999, Smith's car was stolen. Although the car eventually was recovered, the rims were removed and remained missing. Two or three weeks before the shooting, Smith noticed a vehicle parked at a gas station with the same rims as those stolen from his car. Smith stopped and spoke to the driver of the vehicle who turned out to be Santiago. Smith took down Santiago's license plate number. Smith told Santiago that he believed the rims were his stolen rims, but Santiago did not believe him. Smith spoke to Santiago for about 10 minutes about the rims. Smith testified that the conversation never became heated and that no threats were exchanged.

On July 20, 2000, Smith and two friends, including victim Derrick Phillips, went to The Garage bar in Tampa. Santiago was also at the bar with some of his own friends. Shortly after they arrived, Smith and his friends approached Santiago's group, and they again discussed the rims for about 5 minutes. Smith reiterated that he believed Santiago had his rims. Santiago again denied that the rims were Smith's. According to Smith, this conversation, like the one at the gas station, never became heated and no threats were exchanged between the two groups. In contrast, Santiago testified that during this discussion, Smith and

3

Phillips "started . . . hollering like they wanted to fight," and before they walked away, Phillips said, "[W]e'll take care of this when we get out the club."

Santiago's friend Chike Tim was also present on the night of the shooting and witnessed the conversation inside the bar. At trial, Tim testified that Smith and his friends had "surrounded" Santiago to talk to him about the rims. Initially, they were just talking, but at some point the situation escalated. Tim thought that Smith and his friends "were going to like jump [Santiago], like, fight," and thus Tim and Santiago's friends intervened to break up the argument. Another friend of Santiago's, Thomas Booker, likewise testified that the conversation between Santiago and Smith initially "wasn't really hostile," but that it ended with Smith threatening to call the police to take his rims back from Santiago.

At the end of the night, when the bar started to empty out, both groups began heading to their respective cars. Smith testified about what happened next. Smith was standing by his car in the parking lot, and then he saw Santiago standing by his own car. At that time, no words were exchanged between the two men.

At some point, Derrick Phillips walked away from Smith's car and past Santiago's car. According to Smith, Phillips did not approach Santiago's car or talk to Santiago. Smith yelled at Phillips that it was time to leave, and Phillips began walking back toward Smith's car. As Phillips walked past Santiago's car,

4

Smith saw Santiago draw a gun, which he described as a chrome-plated revolver, and shoot Phillips twice in the back.

Smith began to run away, but turned back at one point and saw Santiago point the gun in his direction and fire another shot (the third shot). Smith testified that did not hear any other shots fired that night. Neither Smith nor Phillips had a gun. Phillips likewise testified that he was not armed and that he did not see Smith with a gun that night.[1] Other witnesses also testified that they did not see Phillips or anyone else with a gun at the time of the shooting.

At trial, Santiago testified and gave a very different account. According to Santiago, after leaving the club and going to his car, he sat down in the driver's seat and closed his eyes for a few minutes. When Santiago opened his eyes again and reached to close his passenger-side door, someone came up to the passenger side of his car, stuck a gun in the car, and said "Chico, give it up." Santiago testified that he opened the driver's side door to get out of the car, but another person came up behind him and punched him in the head.

Santiago then moved to try and get out of the car on the passenger side, but the person with the gun fired a shot into his car. At that point, Santiago grabbed his own gun and fired two shots. Although Santiago later claimed he acted in self-

---

[1]The portion of the trial transcript containing Phillips's testimony is not contained in the district court record, but the parties do not dispute the substance of Phillips's testimony. Likewise, the parties do not dispute the substance of Detective Julia Massucci's testimony, discussed below, part of which is also missing from the record.

defense, Santiago stated that he was not aiming at anyone when he fired and was just trying to scare off the person who shot at him.  Santiago then heard another shot go off, dropped his gun, and attempted to flee in his car so he would not get shot.

Booker, Santiago's friend, testified that he saw Smith, Phillips, and a third person approaching Santiago's car from different sides while Santiago was sitting in his car with the doors closed.  It looked to Booker like the three men were "going to jump" Santiago.  Booker started to approach Santiago's car himself, but hesitated when he saw Phillips reach into his pants like he was reaching for a gun.  Booker acknowledged, however, that he never actually saw a gun.  As Booker turned to face the third person who was approaching Santiago's car, he heard a shot and dropped to the ground.  Booker then heard a second shot and saw Phillips fall to the ground.  Other evidence showed these were Santiago's two shots into Phillips's back.

As Booker started to crawl away, Booker heard a third shot and saw another person—the deceased victim Kevin Hayes—fall to the ground.  Hayes was not involved in the dispute between Smith and Santiago.  Booker testified that he then saw Smith run up to Phillips, pick something up (which Booker assumed was a gun), and put it in his (Smith's) car.

6

Law enforcement officers in the area of the bar responded immediately and were able to stop Santiago from fleeing the scene. Officers recovered a revolver from Santiago's car, which contained three spent shell casings and two live rounds of ammunition. Gunshot residue was found on Santiago's hands, and ballistics testing later confirmed that the shot that killed Hayes was fired from Santiago's gun. The two shots into Phillips's back also came from Santiago's gun.

A search of Smith's car did not reveal any firearms, bullets, or shell casings. Detective Julia Massucci testified that (1) she found no evidence that there was more than one shooter that night or (2) that anyone other than Santiago and the officers at the scene was armed.[2] Although Santiago claimed the incident started with a shot into his car, there was no evidence of any such shot into Santiago's car.[3]

## C.    Jury Instructions, Verdict, and Direct Appeal

Following the close of the evidence, the state court instructed the jury. In relevant part, the state court gave the following instructions regarding self-defense and that a defendant is justified in using deadly force while resisting another's attempt to murder him, stating:

_____

[2]Detective Massucci also conducted a taped interview of Santiago after his arrest, in which Santiago admitted to shooting his pistol.
    [3]As Santiago attempted to flee the scene, a responding officer accidentally fired a shot into the seat of Santiago's car. Other than that shot, there was no evidence that a shot was fired into Santiago's car at the outset of the incident.

An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense which Jose Fabian Santiago is charged if the death of Kevin Alexander Hayes resulted from the justifiable use of force likely to cause death or great bodily harm.

The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him.

A person is justifiable in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.

The state court then gave the following exception to the self-defense instruction, which provides that deadly force is not justified if the defendant himself was attempting to commit a forcible felony, stating:

However, the use of force likely to cause death or great bodily harm is not justifiable if you find that Jose Fabian Santiago was attempting to commit, committing, or escaping after the commission of murder.

This latter instruction is known as the forcible felony exception to self-defense. Santiago's trial counsel did not object to these instructions.

The jury found Santiago guilty of the first degree murder of Hayes (Count 1), two counts of attempted murder as to Phillips and Smith (Counts 2 & 3), obstructing or opposing an officer with violence (Count 6), and aggravated fleeing

8

and eluding (Count 7).  The state trial court sentenced Santiago to life imprisonment on Santiago's first-degree murder conviction in Count 1.[4]

Santiago appealed, but did not raise any challenge to the trial court's self-defense and forcible felony instructions at that time.  On direct appeal, the Florida Second District Court of Appeals ("Second DCA") affirmed Santiago's convictions for murder, attempted murder, and obstructing or opposing an officer with violence, but reversed his conviction for aggravated fleeing and eluding and remanded to the trial court with instructions to enter judgment on the lesser included offense of fleeing.  Santiago v. State, 847 So. 2d 1060 (Fla. Dist. Ct. App. 2003).

## II.    RULE 3.850 PROCEEDINGS

### A.    Rule 3.850 Motion and Initial Appeal

In September 2006, Santiago filed a pro se motion for post-conviction relief under Fla. R. Crim. P. 3.850, which he later amended.  Among other things, Santiago argued that trial counsel was ineffective for failing to object to the state trial court's self-defense and forcible felony jury instructions.  Santiago contended that the forcible felony instruction was confusing, misleading, and negated his sole defense at trial, which was that he shot at Phillips and Smith in self-defense after being attacked, and struck Hayes by accident.  Santiago asserted that he was

---

[4]The state trial court also sentenced Santiago to 25 years on Counts 2 and 3, 60 months on Count 6, and 15 years on Count 7, all to be served concurrently.

prejudiced by trial counsel's failure to object to the erroneous instruction both because it prevented him from raising the issue on direct appeal and because, had the instruction not been given, the jury may have acquitted him on self-defense grounds.  In support of his argument, Santiago cited Giles v. State, 831 So. 2d 1263, 1265-66 (Fla. Dist. Ct. App. 2002), in which the Fourth DCA held that the forcible felony instruction may properly be given only where the defendant is engaged in a separate forcible felony from the one for which he is claiming self-defense, and that an erroneous forcible felony instruction is not harmless where it negates the defendant's sole defense.

Initially, the state 3.850 court denied Santiago's Rule 3.850 motion without an evidentiary hearing, concluding in relevant part that Santiago's counsel was not ineffective for failing to object to the forcible felony instruction because Santiago was charged with multiple forcible felonies.  Santiago appealed, and the Second DCA reversed and remanded for an evidentiary hearing on Santiago's ineffective-counsel claim concerning the forcible felony instruction.  Santiago v. State, 88 So. 3d 1020, 1022 (Fla. Dist. Ct. App. 2012).  The Second DCA explained that the forcible felony exception "applies only when 'the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony.'"  Id. (quoting Giles, 831 So. 2d at 1265).  In other words, "because the defendant must be engaged in a separate and independent forcible

10

felony at the time of the self-defense," the Second DCA elaborated, "[a]n instruction on the forcible-felony exception should not be given unless the defendant is charged with an independent forcible felony, in addition to the offenses for which he claims self-defense." Id. (emphasis and internal quotation marks omitted).[5]

The Second DCA determined that, at least on the limited record that was before the court, Santiago was not "engaged in a separate and independent forcible felony" at the time of the shooting because he claimed self-defense as to all three murder and attempted murder charges (Counts 1, 2, and 3), and "when the defendant claims self-defense as to every offense with which he is charged, there is no separately charged 'forcible felony' to trigger the application of the instruction." Id. at 1023-25. The Second DCA further concluded that the two assault charges (Counts 4 & 5, of which Santiago was acquitted) could not serve as the basis for the forcible felony instruction because they occurred after the alleged self-defense. Id. at 1025. Accordingly, the Second DCA concluded that Santiago had a facially valid ineffective-counsel claim, and remanded for further proceedings. Id. at 1025-26.

---

[5]Notably, at the time of Santiago's trial in July 2002, the forcible felony exception was part of Florida's pattern self-defense instruction. The Florida Supreme Court removed that language from the pattern instruction in 2006. See In re Standard Jury Instructions In Criminal Cases, 930 So. 2d 612, 612 (Fla. 2006) (citing Giles, 831 So. 2d 1263). Giles was decided in December 2002, after Santiago's trial in July 2002. See Giles, 831 So. 2d at 1263.

11

B.    **Evidentiary Hearing & Decision on Remand**

On remand, the state 3.850 court held an evidentiary hearing at which Santiago's trial counsel, Dwight Wells, testified.  Wells testified that he believed Santiago "felt threatened by—by just numbers if nothing else," and had "an arguable self-defense case."

Specifically, in describing Santiago's theory of self-defense, Wells testified that:

> Well, Mr. Santiago [was involved in a dispute about stolen property[6]]. The place where that took place was a club.  There was a confrontation.  Mr. Santiago went out to his vehicle, I believe, to leave, was followed out to the vehicle by, I believe, three other people.  I think Mr. Santiago felt threatened by—by just numbers if nothing else, and it was at that time that the shooting took place.  And I felt that it was an arguable self-defense case.

Wells also testified, however, that decedent Kevin Hayes "was truly an innocent bystander."  Wells further testified that he should have objected to the forcible felony instruction being given and that he believed his performance was deficient.

Following the evidentiary hearing, the state 3.850 court issued a decision again denying Santiago's ineffective-counsel claim regarding the forcible felony instruction.  The state 3.850 court determined that Santiago had not shown the requisite prejudice for his ineffective-counsel claim.  Although it may have been error for the trial court to give the forcible felony instruction, the state 3.850 court

---

[6]Wells mistakenly stated that it was Santiago whose property had been taken, not that Santiago was suspected of possessing Smith's stolen property, as was in fact the case.

12

found that error did not amount to a fundamental error that deprived Santiago of a fair trial because the outcome of the trial would not have been different. After recounting some of the relevant trial testimony, the state 3.850 court determined that Santiago's self-defense claims as to the victims were "extremely weak." [Accordingly, the state 3.850 court concluded that Santiago could not demonstrate prejudice because, even if counsel had objected to the erroneous forcible felony instruction and that instruction was not given, the outcome of the trial would not have been different.

## C.    Second 3.850 Appeal

Santiago again appealed, arguing that the state 3.850 court erred in concluding that his self-defense claim was extremely weak. Santiago contended that the state's evidence at trial was insufficient to disprove his self-defense claim beyond a reasonable doubt. Santiago maintained that a defendant claiming self-defense must only produce evidence establishing a prima facie case of self-defense, and that the burden then shifts back to the government to prove that the defendant did not act in self-defense beyond a reasonable doubt. Santiago asserted that his testimony and that of his witnesses established a prima facie case of self-defense that the state's evidence did not rebut. Thus, Santiago submitted that the state had not shown the erroneous forcible felony instruction, which negated his sole defense, was harmless.

13

In a per curiam decision without a written opinion, the Second DCA

affirmed the denial of Santiago's jury instruction claim.[7]  Santiago v. State, 172

So. 3d 880 (Fla. Dist. Ct. App. 2015) (per curiam).

## C.     28 U.S.C. § 2254 Petition

Thereafter, in May 2015, Santiago filed a pro se 28 U.S.C. § 2254 habeas

corpus petition raising several claims, including that trial counsel was ineffective

for failing to object to the trial court's giving of the forcible felony instruction as

an exception to the self-defense jury instructions.  Santiago argued that the

erroneous instructions negated his sole theory of defense at trial, depriving the jury

of an opportunity to seriously consider his self-defense theory, and that counsel's

failure to object prevented him from raising the issue on direct appeal.  Santiago

further asserted that, had trial counsel preserved the objection, the Second DCA

would have reversed for a new trial on direct appeal.

The district court denied Santiago's § 2254 petition.  In relevant part, the

district court concluded that the state 3.850 court did not unreasonably apply

Strickland[8] or make an unreasonable factual determination in denying Santiago's

ineffective-counsel claim regarding the jury instructions.  The district court

determined that the record supported the state 3.850 court's conclusion that

----

[7]Santiago also filed a petition for habeas corpus in the Second DCA raising a claim of ineffective assistance of appellate counsel for failing to raise the jury instruction issue on direct appeal, which the Second DCA denied in a per curiam decision.
[8]Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

Santiago's self-defense claim was weak, noting that the state "presented evidence that Santiago armed himself with a weapon in an altercation with an unarmed victim where he had ample opportunity to avoid the use of deadly force." In other words, if the self-defense claim was weak in the first place, instructing the jury on the forcible felony instruction to self-defense was not a fundamental error. Thus, even assuming the forcible felony instruction was erroneous, the district court concluded that Santiago could not establish a reasonable probability of a different outcome had his trial counsel objected. The district court also denied Santiago's motions for a COA and leave to proceed in forma pauperis ("IFP") on appeal.

Santiago appealed. This Court granted a COA as to his ineffective-counsel claim regarding the jury instructions, which we discuss below.[9]

## II.  DISCUSSION[10]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, after a state court has adjudicated a claim on the merits, a federal court may grant habeas relief to a state prisoner only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the

[9]Although Santiago proceeded pro se in the district court, he has counsel in the present appeal.

[10]In examining the denial of a 28 U.S.C. § 2254 petition, "we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11th Cir. 2007).

15

[s]tate court proceeding." 28 U.S.C. § 2254(d)(1), (2). The AEDPA imposes a "highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted). In other words, it is not enough to say that the state court's decision was incorrect or that we would have reached a different conclusion in the first instance. See Daniel v. Comm'r, Ala. Dep't of Corrs., 822 F.3d 1248, 1259 (11th Cir. 2016). Rather, we must find that the state court's decision was objectively unreasonable—a substantially higher threshold. Schriro v. Landrigan, 550 U.S. 465, 473, 478, 127 S. Ct. 1933, 1939, 1942 (2007).

To succeed on an ineffective-counsel claim, a petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. Nejad v. Att'y Gen., 830 F.3d 1280, 1290 (11th Cir. 2016). A habeas petitioner must satisfy both prongs to demonstrate an entitlement to habeas relief. Bishop v. Warden, 726 F.3d 1243, 1254 (11th Cir. 2013). To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 792 (2011). "The standards created by

16

Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. at 105, 131 S. Ct. at 788 (internal quotation marks and citations omitted).

We agree with the district court that the state 3.850 court did not unreasonably apply federal law or make an unreasonable determination of the facts in concluding that Santiago failed to demonstrate prejudice. As the state 3.850 court concluded, Santiago's self-defense claim was "extremely weak." The state 3.850 court's conclusion that Santiago had not shown a reasonable probability that, absent the forcible felony instruction, the jury would have found him not guilty based on his self-defense theory was not unreasonable. 28 U.S.C. § 2254(d)(1), (2); Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

In essence, Santiago's claim amounted to his own testimony that two unidentified individuals assaulted him in his car and one of the individuals fired a shot into Santiago's car, prompting Santiago to draw his own gun and fire to scare them off. None of the evidence presented at trial, even the testimony of Santiago's own witness Booker, supported Santiago's account. See Pinkney v. Sec'y, Dep't of Corrs., 876 F.3d 1290, 1299-1302 (11th Cir. 2017) (rejecting a Florida prisoner's ineffective-appellate-counsel claim regarding an erroneous forcible felony instruction in part because the defendant's self-defense claim was contradicted by the trial evidence).

17

Multiple witnesses testified that neither Phillips nor Smith was armed that night, and the police investigation confirmed that Santiago was the only person with a firearm other than the officers at the scene and that all three shots fired came from Santiago's gun.  No evidence substantiated Santiago's claim that someone had shot into his car at the outset of the incident.  Additionally, Phillips was shot twice in the back, indicating that he was not attacking Santiago at the time of the shooting and that Santiago was the aggressor.[11]  Similarly, Smith testified he was standing by his own car when Santiago began shooting and started running away from Santiago after he saw Phillips get shot, indicating that Smith was not attacking Santiago when Santiago fired the third shot that struck Hayes, who Santiago admits was an innocent bystander.

Furthermore, Booker's account was inconsistent with Santiago's and actually tended to support the state's theory of the case.  First, in contrast to Santiago's account of two individuals entering his car and assaulting him, Booker testified that Smith, Phillips, and a third man were only approaching Santiago's car.  Second, Booker's account regarding the timing of the gunshots is consistent with the testimony of the other eyewitnesses, as well as the physical evidence. Booker testified he heard two shots fired, then saw Phillips fall to the ground, followed by a third shot, after which he saw Hayes fall to the ground.  Although

---

[11]Hayes also was shot from behind, with the bullet striking him the back of the head.

18

Booker did not see who fired these shots, his testimony is consistent with the state's evidence showing that the first two shots were the two fired by Santiago into Phillips's back, and the third was the shot fired by Santiago into the back of Hayes's head.

Moreover, the state's entire theory at trial was that Santiago had not acted in self-defense, but rather had intentionally shot at Phillips and Smith, and in the course of doing so, also killed Hayes. The state did not rely on the forcible felony exception at any time during the trial, nor did the state raise, or even mention, that exception in its closing argument. Rather, the state argued that the evidence proved Santiago was guilty of the murder and attempted murder charges, and that his claims of self-defense were wholly implausible and refuted by the evidence. In other words, aside from the district court's brief instruction, no one ever mentioned, let alone argued, the forcible felony exception to the jury.

Under these circumstances, and given the dearth of evidence supporting Santiago's purported self-defense theory, we think it clear that the jury agreed with the state that Santiago's self-defense theory "'strained even the most remote bounds of credulity,'" and rejected his defense on that basis, rather than as a result of any confusion caused by the forcible felony instruction. Pinkney, 876 F.3d at 1300 (quoting Martinez v. State, 981 So. 2d 449, 456 (Fla. 2008)). Accordingly, it was not objectively unreasonable for the state 3.850 court to conclude that

19

Santiago had an extremely weak self-defense theory and that it was not reasonably likely a properly instructed jury would have acquitted Santiago on that basis. See Harrington v. Richter, 562 U.S. at 112, 131 S. Ct. at 792; Schriro, 550 U.S. at 473, 478, 127 S. Ct. at 1939, 1942. The district court therefore did not err in deferring to the state 3.850 court's decision.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Santiago's § 2254 petition.

**AFFIRMED.**